### ED. SCHILLINGS v. THE STATE.

No. 800.　Decided November 16, 1910.

**Swindling—False Representation—Insufficiency of the Evidence.**

Where, upon trial of swindling which involved the question of false cotton weights, the evidence showed that there were no false representations made by the defendant to the prosecutor, or that defendant was guilty of swindling him in any manner with regard to the weighing of the cotton, the conviction could not be sustained.

Appeal from the County Court of Bowie.　Tried below before the Hon. Joe Hughes.

Appeal from a conviction of swindling; penalty, a fine of $100 and one day confinement in the county jail.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On the question of the insufficiency of the evidence: Fairy v. State, 50 Texas Crim. Rep., 396, 97 S. W. Rep., 700; Mason v. State, 31 Texas Crim. App., 306.

*John A. Mobley,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of swindling, his punishment being assessed at a fine of $100 and one day's imprisonment in the county jail.

He raises two serious questions, the first being that the count of the indictment under which the conviction occurred is invalid and totally insufficient to authorize a conviction; and the second brings in review the sufficiency of the evidence. Taking the view we do of this record, it is deemed unnecessary to discuss the first question. We are of opinion that the evidence is not sufficient to support the judgment of conviction.

Substantially, the facts disclose that appellant was a cotton buyer in Texarkana, Bowie County. There came to him a man named Smith with eight bales of cotton. Their conversation led to a pur-

chase of the cotton by appellant, and for which he paid fourteen and one-half cents per pound. After making the deal he requested Smith to have the cotton weighed, bring him the weights, and he would pay him the money. Scherer weighed the cotton for Smith, and gave him the weight of the eight bales, the sum total of which was 4,043 pounds. With· this Smith returned to appellant. They went into· the office of Percell, the manager of the cotton yard. Percell made out the ticket showing the weights and such data as was necessary to be placed on it, which was signed by Schillings and delivered to Smith, who carried it to the bank and drew the money called for by the number of pounds multiplied by the fourteen and one-half cents per pound. Smith said that he became dissatisfied with the weights of the cotton inasmuch as there had been a loss from the weight shown at the gin when the cotton was originally ginned and weighed. The gin weight showed something over 4,200 pounds. Smith said that he could read and write and knew at the time of the weight, and before he drew the money, that there was a discrepancy between the gin weights and the weights given him by Mr. Scherer. That after receiving his money he returned to Schillings and requested a reweighing of the cotton. To this appellant readily assented, and requested Smith to go and get anyone whom he saw proper to reweigh the cotton. Smith applied to one or more parties to reweigh the cotton, who declined to have anything to do with it. The cotton was sold the evening of and after the purchase by appellant to Mr. Hooks, who was the agent of a firm of cotton dealers. The cotton was carried to the compress. A day or so after the cotton was carried to the compress it was reweighed, and found to weigh even more than the gin weights indicated. This is sought to be accounted for by the fact that from September until the 16th of December the cotton had remained at the gin yards where ginned without cover or protection, and had absorbed weight by reason of rain, and that after it was carried to the compress it had been exposed to rain and snow. The parties reweighing the cotton stated they brushed some snow off in order to reweigh it. Smith further testified that Mr. Scherer, he thought, weighed the cotton all right, that is, he thought he was weighing it properly at the time. In effect he states he saw no evidence of anything wrong in regard to weighing the cotton. It is also shown beyond question that appellant was not present at the time the cotton was weighed, and knew nothing about it further than the weights brought him by Smith after being weighed by Scherer. Percell testified that he was manager of the cotton yard. He further testified that the party who usually weighed cotton at the yard had quit, and they had no particular person assigned to this duty or work. His testimony is supplemented by that of others in the record to the effect that the cotton buyers would weigh for each other when convenient, or get somebody to do this work. Scherer was a competitive cotton buyer, and there is no attempt to show col-

lusion between appellant and Scherer in regard to underweighing the cotton. However, this fact was introduced for what it was worth; that when Smith failed to get another party to reweigh the cotton appellant said to him: "We will get Mr. Scherer to reweigh it in the morning." Smith returned the next morning, but Scherer did not show up, and, of course, did not reweigh the cotton. Scherer was a cotton buyer himself, and there is nothing to indicate where he was or what he was doing at the time that Schillings said he would have him present. Moore testified that he went to see appellant with reference to the matter the day after the sale transaction, had a talk with him about it, claiming that he had a mortgage on the cotton. He says that appellant refused or failed to tell him where the cotton was, and stated that he did not know. This was after the cotton had been moved by Hooks and sent to the compress. Appellant states that Moore talked a little roughly, and that when he stated he had a mortgage on it he declined to tell him anything. This is, in substance, the testimony, and under this condition of the record we are of opinion that the State has not shown appellant guilty of swindling. There was no false representations made by appellant to Smith. Smith's testimony excludes this. There was no collusion or indication that there was a collusion between Scherer and Schillings in regard to securing Scherer to underweigh the cotton; and it is conceded that Scherer and Schillings were competitive purchasers of cotton in the open market, and that it was the custom among these cotton buyers for one to weigh the cotton of the other after the regular weigher had ceased weighing cotton on the yard. In order to secure a conviction in a criminal case the State must prove beyond reasonable doubt that appellant was guilty of the offense charged. The presumption of innocence obtains in the trial of such cases, and this presumption and the reasonable doubt in favor of an accused person must be overcome in order to sustain a conviction.

The facts in this case do not justify, in our judgment, the conviction of appellant. Therefore, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*